Dixie P. Holmes, Appellant, v. William John McNeil and Daniel Edgar Palmer.—No. 39883.—204 S. W. (2d) 303.

Division Two, May 12, 1947.

Motion for Rehearing or to Transfer to Banc Overruled, September 8, 1947.

*Claude L. Schenck* and *Paul Thomas* for appellant.

847

*Henry M. Shughart* for respondent William John McNeil, and *Harry P. Thomson, Jr.,* for respondent Daniel Edgar Palmer.

BOHLING, C.—Dixie P. Holmes, plaintiff, prosecutes this appeal from a judgment in favor of William J. McNeil and Daniel E. Palmer, defendants, and for costs entered at the close of plaintiff's case upon the separate motion of each defendant for a directed verdict. She sought $50,000 damages for personal injuries arising out of an automobile accident, charging defendants with negligence connected therewith.

Defendants have joined in a motion to dismiss plaintiff's appeal under Rule 1.15 on the ground the statement in her brief falls short of complying with Rule 1.08(b) and on the ground plaintiff failed "to post a $200 bond." Defendants cite no supporting cases.

Defendants complain that plaintiff's statement does not set out plaintiff's charges of negligence against defendants or the evidence upon which the court sustained the motions for a directed verdict. Plaintiff's statement of the facts is sufficient to indicate actionable negligence on the part of defendant Palmer in the operation of defendant McNeil's automobile, while plaintiff and others were guests of McNeil therein, in such manner as to run over a curb and into a light standard. Defendants, dissatisfied with plaintiff's statement, incorporated a full and complete statement of the facts in their brief and the allegations of negligence in plaintiff's petition. They devoted approximately four pages to the statement of facts while plaintiff limited her statement of the same facts insofar as covered to two pages. Her statement is not free from fault. However, taking plaintiff's brief and the record before us, which is short, the inconvenience occasioned is not such as to call for a dismissal of the appeal, although it is proper to disclose in an appellant's statement that evidence upon which the court sustains motions for a directed verdict. Like motions have been overruled in similar circumstances under prior rules (350

848

Mo. Appendix iii, Rules 15 and 16). Laun v. Union Elec. Co., 350 Mo. 572, 585[6], 166 S. W. 2d 1065, 1073[21]; Smith v. Henwood, 349 Mo. 396, 400[1], 161 S. W. 2d 232, 234[2]. Consult also Nowlin v. Kansas City Pub. Serv. Co. (Mo. App.), 58 S. W. 2d 324, 326[6]; Hyde v. Henman (Mo. App.), 256 S. W. 1088, 1089[1, 2]. The present rules are as liberal for reaching the merits.

■ Judgment was entered February 7, 1946. Plaintiff secured a special order of this court allowing the filing of her notice of appeal (Laws 1943, p. 391, Sec. 130) and filed such notice on April 27, 1946. On May 22, 1946, defendant McNeil filed a separate motion for an order "requiring plaintiff to file an appeal bond and for security for costs," on the grounds plaintiff was a nonresident and also was unable to pay "the costs of this suit and appeal." This motion was sustained, the bond fixed at $200 and plaintiff given thirty days in which to file it. The contention that the appeal be dismissed for plaintiff's failure to file the $200 bond is not well taken for several reasons. This motion, after judgment, came too late to function as a motion for security for costs under Sec. 1402, R. S. 1939, and afford grounds for a dismissal upon plaintiff's ■ failure to comply with the order. See Re Estate of Albert, 80 Mo. App. 554; Laws 1943, p. 375, Sec. 65. The trial court entered no order undertaking to dismiss plaintiff's cause of action or affecting her appeal. The failure to post an appeal bond may subject the judgment debtor's property to execution pending the appeal. "When an appeal is taken after a special order the power to issue a stay is lodged exclusively in the appellate court . . . " Sec. 130(b), Laws 1943, p. 391. We are referred to no authority making the filing of an appeal bond a prerequisite to this plaintiff's right of appeal. It is not within the spirit of the code that this court dismiss an appeal for failure to post a bond for costs. "The Supreme Court and the Courts of Appeal shall have no power or authority to make or enforce any rule or order requiring any party to an appeal to file a bond for costs in those courts." Laws 1943, p. 394, Sec. 135(d). See also Laws 1943, p. 390, Secs. 126, 129, 132, 133; State ex rel. v. Sartorius, 349 Mo. 1039, 1054, 163 S. W. 2d 981, 986[10]; New York Store Merc. Co. v. Thurmond, 186 Mo. 410, 428, 85 S. W. 333, 337; Schultz v. Jones, 223 Mo. App. 142, 148, 9 S. W. 2d 248, 251]7].

The motion to dismiss is overruled.

■ Defendants contend Palmer was not guilty of actionable negligence; stressing Blashfield, Cyclopedia of Automobile Law (1935), 468, Sec. 656, reading: "Fainting or momentary loss of consciousness by the driver of an automobile due to fatigue is not in itself actionable negligence, and, if a driver stricken by paralysis or seized by an epileptic fit still continues with his hands on the wheel of the automobile which he is driving, and, unconscious, so directs it as to cause its collision with another, he cannot be held negligent for the way in which

he controls it." The circumstances of the instant case, as developed hereafter, do not call for comment on the quoted principle of law. Consult also 42 C. J. 889, Sec. 591; 5 Am. Jur. 605, Sec. 180; 3-4 Huddy, Automobile Law (9th Ed.), 75, Sec. 39; 4 Sherman & Redfield, Negligence (1941), 1645, Sec. 700, n. 92; Annotations, 64 A. L. R. 136, 138 A. L. R. 1388; La Vinge v. La Vinge (Ore.), 158 Pac. 2d 557; Bushnell v. Bushnell, 103 Conn. 583, 131 Atl. 432, 44 A. L. R. 785 (reviewing authorities).

Defendants say a deposition of defendant Palmer offered by plaintiff in evidence is uncontradicted; that it brings plaintiff's case within the quotation from Blashfield, supra; and that plaintiff is bound thereby; citing Orlann v. Laederich, 338 Mo. 783, 790[3], 92 S. W. 2d 190, 193[4]; Steele v. Kansas City S. Ry. Co., 265 Mo. 97, 115, 175 S. W. 177, 181[2]; Elkin v. St. Louis Pub. Ser. Co., 335 Mo. 951, 958[4], 74 S. W. 2d 600, 603[8].

Between 11:00 and 11:30 on the evening of July 20, 1944, plaintiff, Mr. and Mrs. Palmer and Mr. McNeil were in McNeil's 1942 Buick sedan in Kansas City, Palmer operating the car. Mr. and Mrs. Palmer had been recently married. They had been at plaintiff's house to receive their wedding present. They were on their way to a restaurant for a dinner in celebration of the marriage. They had been to several taverns. Palmer stopped the car on Cherry street at a stop sign for southbound traffic about 10 feet north of Admiral boulevard, intending to turn west on Admiral. The weather was clear, the streets were dry, the headlights were burning and there was no traffic or obstruction on the streets to interfere with the operation of the automobile. The automobile was in good mechanical condition. Palmer started the Buick, proceeded into the intersection, turned right, and suddenly the car started swerving to the left, southwesterly, diagonally across the street. Plaintiff, who was riding in the front seat, looked at Palmer, saw he was bent over the wheel, looking down towards the floor of the car. The car continued in the southwesterly direction, gathering speed. Plaintiff shouted "Eddy" and tried to but could not reach the emergency brake, and then braced herself for the impact. The automobile traveled 100 yards or more, went over the curbing, estimated by McNeil to be 18 inches high, and struck a steel light pole. Plaintiff estimated its speed at 20 to 25 miles an hour at the instant of the impact. She sustained severe injuries. The damage to the car approximated $480.

Mr. Palmer testified in the deposition as follows: His left foot had been smashed while at work. He had been back at work for a week but it was still "touchy." When he let out the clutch, he dropped his foot down on the dimmer and it pained him. "I just let go of the wheel and stomped down on the accelerator and it took my reflex along, I guess. . . . The car resumed the position and we just shot forward . . . toward the southwest corner. . . .

Well, we jumped the curb, and hit this light pole.'' He testified that just before it hit the light pole he started to straighten it out; that he got his foot off of the accelerator and ''was fishing for the brake when I hit.''

Having testified Palmer was bent over the wheel, plaintiff was asked on cross-examination if Palmer was ''slumped over the steering wheel.'' She answered: ''Yes; he was bent over, looking at the floor boards, somewhere down there. . . . Q. . . . Didn't you, in answer to that same question when I asked you, say he was slumped over the wheel? A. Well, I may have used that word. There isn't a whole lot of difference. Q. Yes, there is. . . . [Then reading from a deposition:] 'Q. And then what happened? A. That is when everything happened . . . I noticed the car started to go toward the middle of the street, and I looked at Mr. Palmer and he was kind of slumped over the wheel looking down.' Was that question asked you and did you make that answer? A. Yes. Q. That was the truth about it, wasn't it, Mrs. Holmes? A. Yes. Q. He was slumped over the steering wheel? A. Yes.'' Palmer had been driving all right. Further: ''Q. When you said Mr. Palmer was looking down toward the floor boards, what you meant was that his head was leaning down toward the floor? A. He was bent over the wheel, like he was looking. He had his left arm like he was apparently reaching for something. I don't know, but he was leaning over. . . . He had his head bent over like he was looking down. . . . As I recall, his eyes were open. I looked directly at him. I saw him. . . . He had one arm down. He had his head bent over looking down toward the floor. . . . '' On redirect examination, witness, asked to be more specific, testified: ''A. As I said, he was bent over the wheel—whether I said 'slumped' or 'bent'—at that time anyhow he wasn't sitting up straight. I might say he was slumped or he was bent over the wheel, looking down, with his left arm down toward the bottom of the car.'' ''Q. State just what direction his hand was. A. It was moving at the bottom of the car. As I said, grasping or groping for something. I do not know what.'' Witness could see the right side of Palmer's face and testified that his right eye was open, not closed.

A litigant, as stated in 32 C. J. S. 1106, Sec. 1040, and numerous Missouri cases, is not bound by his witness' adverse testimony ''where the testimony is contradicted, either expressly or by inference, by other evidence or circumstances, as where the circumstances or the evidence of other witnesses would warrant the trier of facts in disregarding the testimony or drawing a contrary inference.'' Summa v. Morgan R. E. Co., 350 Mo. 205, 215[4], 165 S. W. 2d 390, 394[5]; Mooney v. Terminal Rd. Ass'n., 353 Mo. 1080, 1089[3], 186 S. W. 2d 450, 454[5].

█ The operator of a motor vehicle on the highways of this State is required to exercise the highest degree of care. Sec. 8383, R. S. 1939; Kaley v. Huntley, 333 Mo. 771, 780, 63 S. W. 2d 21, 25[15]; Adams v. Le Bow, 236 Mo. App. 899, 905, 160 S. W. 2d 826, 828[2]. The fact that the motor vehicle proceeded 100 yards diagonally across a boulevard, gathering speed, jumped or passed over a high curb, leaving the traffic for vehicular travel, and struck a light standard there situate, is prima facie evidence of negligence. Consult Rogles v. United Rys. Co. (Mo.), 232 S. W. 93, 96[1, 3]; Tabler v. Perry, 337 Mo. 154, 163, 85 S. W. 2d 471, 475; Harke v. Haase, 335 Mo. 1104, 1108[1], 75 S. W. 2d 1001, 1002[1]; █ Mackler v. Barnert (Mo. App.), 49 S. W. 2d 244, 246[1]; Miller v. Callahan Const. Co. (Mo. App.), 46 S. W. 2d 948, 950[2, 6]; Annotations, 1 A. L. R. 840, 75 A. L. R. 559. We think the operation of an automobile while looking at the floor boards is also some evidence of negligence. Kaley v. Huntley (Mo. App.), 88 S. W. 2d 200, 204[9-11]; Krause v. Pitcairn, 350 Mo. 339, 357, 167 S. W. 2d 74, 82.

█ This record indicates that Palmer was alert and active immediately after the collision. He had been back at work a week although his foot was "touchy." A jury might consider the jar resulting from the automobile passing over an 18 inch curb and being stopped by a light standard ought to have resulted in greater pain to Palmer than the dropping of his foot from the clutch of the automobile onto the dimmer switch. He would have avoided the crash had he been more alert. He assisted his wife out of the automobile. The Palmers and McNeil departed, with plaintiff's consent, before the arrival of the police. If the jurors viewed plaintiff's testimony in the light most favorable to her they were warranted in finding that plaintiff considered "bent" and "kind of slumped" over the steering wheel synonymous. Although pressed on cross-examination, she refused to leave the impression that Palmer was incapable of action. She detailed the facts upon which she based her statement; testifying that Palmer's head was bent over, looking down, eyes open, looking at the floor, trying to see something and reaching or groping with his left hand in an effort to locate it. A finding that Palmer was conscious was warranted; and whether he was careless and negligent was for the jury. Consult also Bushnell v. Bushnell, supra, 44 A. L. R. 785, 790; Leary v. Oates (Tex. Civ. App.), 84 S. W. 2d 486; Annotation, 138 A. L. R. 1390, 1394. The factor distinguishing the case from defendants' cases, supra, is that there is other testimony than the adverse testimony of the party's witness bearing on the fact issue. The proof was within plaintiff's charges of negligence.

The judgment is reversed and the cause is remanded. *Westhues* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.